*232 By the Court,
Eobertson, Ch. J.
Although the note in question in this case seems to have been sent to the plaintiffs merely for collection, no question was made, on the trial, of their right to recover the amount claimed to be still due and unpaid upon it. The action was substantially on the note, and the sole question in the case was whether the whole amount had been paid by the defendants to the plaintiffs. The latter endeavored to disprove it by various facts, such as that the aggregate of the amounts received by them by their clerks on the day such' note matured, fell short of the amount claimed as unpaid on such note ($300,) the amount which ought to have been received. That in receiving payments such clerks were always governed by the figures in the margin of or above promissory notes paid at their bank, and not by the amount written in the notes. That the figures written in the note in question were just the same amount below the sum stated in the body of the note. And that the defendants, after taking up the same, endeavored to conceal the short payment by tearing off the top of such note which had such figures written thereon, without any proper motive therefor. If the evidence introduced on the part of the plaintiffs on the trial established such facts, and those facts in any way tended to establish the fact of short payment, the whole matter was in the hands of the jury.
In regard to the figures in the corner of the note, six witnesses were examined on behalf of the plaintiffs, Camp, Baldwin, Williams, Mailer, Buckley and Parmley, who were clerks in their employ, and whose duty it was to make entries of notes received by the bank. They proved a habit of making such entries from the notes according to the figures which showed their amount written on the top or margin of them, instead of the amounts in the body of them. Two such entries were given in evidence ; one ifi the collection book on the receipt of the note, and one in a credit book in which a list of notes due on the same day was entered, both made from the note in question. In both of them the note was entered as of the less sum, being $300 less than the real amount in the body *233 of it. A bank notice, also, of the time the note became due, was produced, having been found on the string at the bank, on which such notices are usually strung when brought back at the time of paying notes. The contents of which notice had been taken from the original note by a clerk (Demarest) whose duty it was to fill up the same, and it was placed, according to his custom, in a tin box, from which such notices were daily taken by a messenger of a letter express company (Earle) to deliver to parties to whom they were directed. Such messenger testified that he always delivered all notices that were placed in such box, to the parties to whom they were addressed, and that he had often left notices of the same kind at the place of business of the defendants. In such notice, the note in question was described as of the smaller amount. The note itself, when produced, had the part torn out where the figures had been, as well the signature torn off. There was, therefore, some evidence that the figures in the note had represented the smaller amount, and this gave plausibility to the theory of the possibility of a mistake having been thereby produced in receiving the less amount, if it was received.
It was also proved that four clerks were authorized to receive payment of notes due at the bank of the plaintiffs, Buckley, Williams, Mailer and Parmley, besides the first assistant note teller (Baldwin,) all of whom testified that they put all the money they received into a drawer or till, from which it was delivered to the note teller. Such note teller testified that he footed up the cash receipts every night, and the amount must agree with the credits, otherwise the books would not balance ; and that on the day of the maturity of such note they, agreed within seven cents. There was, therefore, evidence to show that $300 less was received by the bank upon account of notes on that day, than should have been received if the whole amount due upon the note in question, as well as other notes, had been paid.
The evidence would have been more satisfactory if the amounts paid by other persons than the defendants to the *234 plaintiffs, on the same day, had been proved to have been paid, and on what account, and if possible in what manner, and the aggregate of receipts had also been proved, and the absence of such proof on the part of the plaintiffs, unexplained, afforded reasonable grounds of suspicion for the jury, since it would be extremely difficult for the defendants to fasten a mistake upon any other one of numerous payments ; still it only formed a matter proper for the jury, upon which they alone were entitled to pass.
There was evidence, therefore, that a mistake had occurred in regard to some payments to the plaintiff on the day of the maturity of the note in question, corresponding with the difference between the amount indicated by its figures and that expressed in its body, of which also there was evidence. The character of the mutilation of the note where the figures had been, besides tearing off the signature, also creates suspicion, as it was entirely unexplained. Although the evidence was, to a certain extent, circumstantial, the jury had a right to rely on it in preference to the direct testimony of one of the defendants, who was interested. No error of law seems to have been committed. The judgment and order appealed from must be affirmed, with costs.